IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JODY CRUZ, *et al.*, | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | NO. 26-mc-00022 |
| | : | |
| PROGENESIS, INC., | : | |
| *Defendant.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                          **APRIL 15, 2026**

Plaintiffs are engaged in ongoing litigation against Defendant Progenesis, Inc. before the U.S. District Court for the Southern District of California. *See Cruz v. Progenesis, Inc.*, No. 24-cv-1789 (S.D. Cal.). On February 27, 2026, Defendant moved to quash or modify a subpoena served on non-party Main Line Fertility, which requires compliance in the Eastern District of Pennsylvania (the "Defendant's Motion to Quash"). *See* ECF No. 1. In the alternative, Defendant seeks entry of a protective order limiting the scope of any production by Main Line Fertility. *Id.* Plaintiffs filed an Opposition to Defendant's Motion to Quash on March 13, 2026. *See* ECF No. 7. For the reasons set forth below, Defendant's Motion to Quash (ECF No. 1) is **DENIED** in full.

### I.    BACKGROUND

The Court assumes the parties are familiar with the facts and procedural history of the underlying litigation. Plaintiffs are a group of individuals who brought a class action lawsuit due to alleged "false, deceptive, unfair, and misleading advertising, marketing, and promotion of Defendant's preimplantation genetic testing for aneuploidy ('PGT-A' or 'PGT-A testing')." ECF No. 11, Ex. A ¶ 1. Defendant marketed its PGT-A testing product to consumers, clinics, and clinicians "as an add-on to the IVF process . . . to screen embryos for chromosomal abnormalities."

*Id.* ¶¶ 10–12.  The results of Defendant's PGT-A testing purport to determine which embryos are suitable for implantation and which ones are abnormal and unsuitable for implantation.  *Id.* ¶ 16. Plaintiffs and members of the class each spent a significant amount of money on Defendant's testing as an add-on to their IVF treatment based on purported "material misrepresentations and omissions."  *Id.* ¶ 1; *see also id.* ¶¶ 17, 75–76.  Therefore, Plaintiffs filed suit to recover damages from "paying for an unproven and unreliable test sold utilizing false statements and omissions." *Id.* ¶ 283; *see also id.* ¶¶ 2, 138, 178, 282.[1]  In connection with Plaintiffs' lawsuit, they served a subpoena on non-party Main Line Fertility, a Pennsylvania clinic that named Plaintiff, Alexis Vastardis, purchased Defendant's PGT-A testing from when receiving IVF treatment.  *See* ECF No. 7 at 5; ECF No. 11, Ex. B; *see also* ECF No. 11, Ex. A ¶ 307.

On February 27, 2026, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii)–(iv), Defendant moved to quash or modify the subpoena served on Main Line Fertility on the basis that the subpoena (1) is facially overbroad, (2) is not proportional to the needs of the case, (3) has a temporal scope that is excessive, and (4) requests confidential, commercial information that should be protected from disclosure.  *See* ECF No. 1-1 at 6, 9–12.  In the alternative, Defendant moved for the entry of a protective order pursuant to Rule 26(c)(1) to limit any production.  *Id.* at 12–13.

---

[1] Plaintiffs asserted causes of action for (1) violations of California Unfair Competition Law (Counts I and II); (2) violations of California Consumer Legal Remedies Act (Count III); (3) violations of Texas Deceptive Trade Practices Consumer Protection Act (Count IV); (4) violations of Florida Deceptive and Unfair Trade Practices Act (Count V); (5) violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI); (6) violations of Illinois' Consumer Fraud and Deceptive Business Practices Act, and Uniform Deceptive Trade Practices Act (Count VII); (7) fraud (Count VIII); (8) fraud by concealment/omission (Count IX); and (9) unjust enrichment/restitution (Count X).  *See* ECF No. 11, Ex. A ¶¶ 347–478.  Plaintiffs are seeking to certify a nationwide class and a class of individuals from California, Texas, Florida, and Pennsylvania.  *Id.* ¶¶ 329–33.

On March 13, 2026, Plaintiffs filed an Opposition to Defendant's Motion to Quash.  *See* ECF No. 7.  Defendant's Motion to Quash is before the Court.

## II.    <u>DISCUSSION</u>

It is well-settled that "[t]he conduct of discovery is a matter" that is typically reserved "for the discretion of the district court."  *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987); *see also Davis v. Gen. Accident Ins. Co. of Am.*, No. 98-cv-4736, 1999 WL 228944, at *1 (E.D Pa. Apr. 15, 1999) ("Under the Federal Rules of Civil Procedure and in the United States Court of Appeals for the Third Circuit, district courts have broad discretion to manage discovery." (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995)).  "A subpoena under Rule 45 must fall within the scope of proper discovery under" Rule 26(b)(1).  *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (internal quotations and citation omitted).  A district court "must quash or modify a subpoena" if, among other reasons, the subpoena "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).  In addition, when a subpoena is issued to a third-party, another party may move to quash the subpoena only if it burdens the party's personal right or privilege in the sought after materials.  *See Est. of Ungur v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) ("[A]bsent a privilege, personal interest, or proprietary interest, defendant has no standing to seek to quash"); 9A Wright & Miller's Federal Practice & Procedure § 2459 (3d ed. Sept. 2025).

### A.  Defendant Has Standing to Challenge the Subpoena

As a threshold matter, the parties dispute whether Defendant has standing to challenge the subpoena served on non-party Main Line Fertility.  *See* ECF No. 1-1 at 7–8; ECF No. 7 at 7. Defendant does not assert any privilege with respect to the information sought in the third-party

3

subpoena, but contends that it has a "personal right" in the requested documents and subject matter of the subpoena. *See* ECF No. 1-1 at 7–8.

Courts have found that parties have a personal right or interest in connection with third-party subpoenas that seek, for example, bank records, confidential settlement agreements, and proprietary information. *See Green v. Cosby*, 216 F. Supp. 3d 560, 563–64 (E.D. Pa. 2016) (collecting cases); *Eichenwald v. Rivello*, 321 F. Supp. 3d 562, 564 (D. Md. 2018) (explaining that parties may have standing to challenge a third-party subpoena "when the party has some interest (personal, proprietary, privilege, or so forth) in the information sought"). While "the mere fact that a third-party subpoena seeks information about a party's conduct" does not necessarily suffice to establish a "personal interest" in the subpoena, *see Green*, 216 F. Supp. 3d at 564, here, Plaintiffs' subpoena seeks documents that relate to more than the Defendant's conduct in broad strokes.

Among other items, the subpoena seeks Defendant's "own contractual terms and pricing, its financial arrangements with Main Line Fertility, its proprietary marketing materials, and its communications." ECF No. 1-1 at 7–8. Therefore, the Court finds that Defendant adequately demonstrated it has a "personal interest" in the requested materials because Plaintiffs are seeking to obtain documents involving Defendant's proprietary and financial information. *See, e.g.*, *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. 15-cv-290, 2017 WL 4310221, at *5 (M.D. Pa. Sept. 28, 2017) (finding standing where "the subpoenas request confidential and proprietary information regarding [the defendant's] business operations, and . . . [the defendant] has an interest in maintaining the confidentiality of that information"); *CedarCrestone Inc. v. Affiliated Comput. Servs. LLC*, No. 14-mc-0298, 2014 WL 3055355, at *3 (M.D. Pa. July 3, 2014) (finding standing where a plaintiff showed that it had "a proprietary interest in protecting its

4

confidential information"); *Trevino v. Transportadora Egoba SA DE CV*, No. 22-cv-92, 2023 WL 11988728, at *2 (S.D. Tex. June 1, 2023) ("A party has standing to challenge a subpoena issued to a non-party if the subpoena seeks proprietary, confidential, or protected information sensitive to the party."). Accordingly, Defendant has standing to challenge the subpoena to the extent it concerns Defendant's proprietary information.

### B. The Subpoena Does Not Impose an Undue Burden

Defendant argues that the subpoena served on Main Line Fertility is unduly burdensome due to its breadth, disproportionality, and temporal scope. *See* ECF No. 1-1 at 9–11. Although Defendant has standing generally to quash the subpoena, it lacks standing to challenge the subpoena issued to Main Line Fertility "based on undue burden because it is the third-party that faces the burden of production and not" Defendant. *Green v. Cosby*, 314 F.R.D. 164, 173 (E.D. Pa. 2016); *see also DVM Mfg., LLC v. Gallagher*, No. 16-cv-6369, 2017 WL 3401279, at *2 (E.D. Pa. Aug. 8, 2017) ("A party does not have standing to quash a subpoena served on a nonparty simply because the subpoena is unreasonably burdensome." (collecting cases)). Nevertheless, even if Defendant could properly raise a challenge to the subpoena based on undue burden, the Court finds that the subpoena is not unduly burdensome.

First, Defendant argues that the subpoena is "facially overbroad" because it seeks "all" documents in Main Line Fertility's possession across eight categories without limiting the categories to documents bearing on the specific alleged misrepresentations at issue in the underlying litigation. *See* ECF No. 1-1 at 9–10. Relatedly and for similar reasons, Defendant argues that the burden that would be imposed on Main Line Fertility in "searching for, reviewing, and producing this volume of material . . . is plainly disproportionate to what the claims actually require." *Id.* at 10–11.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). District courts "have broad discretion to determine the scope of discovery." *Murray v. Child.'s Hosp. of Phila.*, No. 20-cv-6292, 2021 WL 5998453, at *3 (E.D. Pa. Dec. 17, 2021). It is the subpoenaing party's initial burden to "demonstrat[e] the requested discovery is relevant, as defined by Rule 26." *White v. Devereux Found.*, No. 23-cv-2060, 2024 WL 5668920, at *2 (E.D. Pa. Jan. 12, 2024) (internal quotations and citation omitted). Once the subpoenaing party has met its burden, "the burden shifts to the party opposing the subpoena to demonstrate that the subpoenas must be quashed" or that "good cause exists for the issuance of a protective order under Rule 26." *Id.* (internal quotations and citation omitted). When evaluating whether a subpoena subjects a non-party to undue burden, "[p]ertinent factors weighed" by a district court include "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prods., Inc.*, Nos. 23-1594 & 23-1596, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023); *see also Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (similar).

Here, Plaintiffs met their initial burden of demonstrating that the requested discovery in the subpoena is relevant to their claims, but Defendant failed to establish that the subpoena is unduly burdensome or disproportional to the needs of the case, such that quashing or modifying it is warranted.

Plaintiffs are seeking relief on behalf of a nationwide class in connection with Defendant's alleged misleading and false advertising of its PGT-A testing.  Evaluating the subpoena within that context, the document requests are tailored towards information that is relevant and proportional to the claims Plaintiffs have asserted and to their burden of proof in the underlying litigation.  For example, with respect to Plaintiffs' request for financial records and contracts, Plaintiffs explained that they need to prove their economic damages, which requires understanding how much Defendant sold its test to Main Line Fertility for and how much Main Line Fertility charged patients for the test.  *See* ECF No. 7 at 9.  Whether Main Line Fertility received any financial incentives for sales of Defendant's PGT-A testing could also bear on Plaintiffs' deceptive marketing claims.  *See id.* at 10; *see also Oppenheimer Fund, Inc.*, 437 U.S. at 351.  This proposed line of discovery is thus important with respect to "the issues at stake in the action."  Fed. R. Civ. P. 26(b)(1).

As to marketing and promotional materials, Plaintiffs' request is targeted only towards those materials "relating to PGT-A services" and is proportional to their claims.  ECF No. 11, Ex. B at 85.  Indeed, as Plaintiffs explained, the documents in Main Line Fertility's possession may be probative of how Defendant's PGT-A testing was presented to patients and provide insight as to what led patients to pay for Defendant's PGT-A testing as an add-on to their IVF treatment.  *See* ECF No. 7 at 10.  Defendant's attempt to limit Request No. 3 (and other requests) solely to a defined category of "Challenged Marketing Claims" that appear in Plaintiffs' Complaint, *see* ECF No. 11, Ex. E at 113, may exclude relevant information that Plaintiffs have demonstrated a need for, such as documents containing information about the promotion of Defendant's products more generally.  *See* ECF No. 7 at 10; *see also Oppenheimer Fund, Inc.*, 437 U.S. at 351 ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and

clarify the issues."). The allegations in Plaintiffs' First Amended Class Action Complaint also do not necessarily reflect an intention to limit their misleading marketing claims to specific phrases at the pleading stage. *See, e.g.*, ECF No. 11, Ex. A ¶ 211 ("Defendant's false and misleading statements include, *without limitation*" (emphasis added)). In fact, Defendant's proposal to limit the responsiveness of documents to "Challenged Marketing Claims" strikes the Court as potentially being *more* burdensome for Main Line Fertility, as it would require the clinic to review all marketing materials with an eye towards producing only documents containing the specific alleged misrepresentations, rather than reviewing to produce marketing materials related to Defendant's PGT-A testing as a whole.

Defendant's attempts to limit other requests based on burden fare no better; instead, the requested documents "could reasonably be calculated to lead to the discovery of relevant information." *Meyer v. Del. Valley Lift Truck, Inc.*, No. 18-cv-1118, 2019 WL 2903666, at *3 (E.D. Pa. July 5, 2019). For instance, Plaintiffs pointed out that in the underlying action, Defendant asserted that Plaintiffs' claims are barred by the learned intermediary doctrine. *See* ECF No. 7 at 9. If Defendant intends to raise a defense that certain alleged misrepresentations are attributable to intermediary clinics, such as Main Line Fertility, then communications made by those intermediaries, in addition to training, pricing, and sales materials, as well as templates, forms, counseling, and promotional materials transmitted to patients, are relevant with respect to Defendant's affirmative defense and to Plaintiffs' claims. *Id.* Regarding the category seeking Main Line Fertility's internal communications, Plaintiffs explained that those documents may have information bearing on why Defendant's PGT-A testing was selected, the clinic's policies surrounding when the test is offered to patients, and the clinic's overall understanding of the test. *Id.* at 10. Plaintiffs have already placed bounds on that request by limiting it to internal policies,

8

procedures, and protocols "relating to PGT-A services."  ECF No. 11, Ex. B at 86.  Finally, documents such as scientific studies, patient complaints, adverse outcomes, false positive and false negative results from Defendant's PGT-A testing are relevant and proportional to the underlying litigation as they may bear on Defendant's representations about the accuracy of its test.  A review of Plaintiffs' requests thus reveals that they are not unreasonably burdensome in either their breadth or proportionality.  And Plaintiffs generally seek documents that may be solely within Main Line Fertility's possession.

Second, Defendant raised a challenge to the temporal scope of the subpoena.  *See* ECF No. 1-1 at 10.  Defendant argues that the scope is excessive because it seeks documents covering a ten-year period and "[t]here is no justification for demanding a decade's worth of documents from a nonparty that encompasses the entirety of its relationship with" Defendant.  *Id.*  Moreover, Defendant asserts that the operative complaint in the underlying action "identifie[d] specific marketing representations allegedly made during a defined period."  *Id.*  In response, Plaintiffs argue that the time limit Defendant proposed "would exclude highly relevant information and has no basis."  ECF No. 7 at 11.

The Court finds that the temporal scope of the subpoena is not unduly burdensome when considering the need for the documents, the relevance of the requested documents, and the scope of the underlying action.  Plaintiffs explained that they are seeking documents from Main Line Fertility that span a decade because "Defendant was founded in 2015," so information about "the development, validation, and promotion of Defendant's PGT-A test, including its accuracy and efficacy . . ., would likely exist from the earliest stages of operation," in addition to information about "the creation of the test, marketing strategies, and communications with IVF clinics" about the test and how it would be sold.  ECF No. 7 at 11.  While the named Plaintiffs purchased

9

Defendant's PGT-A testing between 2022 to 2024, *see* ECF No. 11, Ex. A ¶¶ 286–328, Plaintiffs are seeking to certify both a nationwide class and a class of individuals from several states. *Id.* ¶¶ 329–33. Narrowing the time period in the way that Defendant has proposed, *see* ECF No. 11, Ex. E at 113, may unnecessarily exclude relevant evidence that Plaintiffs might otherwise need in connection with class certification. In addition, courts often permit discovery of documents and information across a ten-year period where a party has demonstrated that the proposed discovery is relevant, important, proportional to the needs of the case, and that the burden of producing it does not outweigh its benefits. *See, e.g.*, *Allen v. Amazon*, No. 24-cv-2846, 2025 WL 3719889, at *5 (N.D. Tex. Dec. 23, 2025) (declining to modify the temporal scope of a subpoena and finding a ten-year scope permissible (collecting cases)); *Henry v. Bank of Am. Corp.*, No. 09-00628, 2009 WL 2337351, at *2 (N.D. Cal. July 29, 2009) (declining to modify a subpoena requesting documents over a ten-year period where a plaintiff did "not present[] any convincing argument that this period is too remote to the facts/issues at play in [the] lawsuit"). Therefore, Defendant has not sufficiently established that the subpoena should be quashed or modified based on its temporal scope. Instead, the requested discovery "meet[s] the liberal standard of relevancy under Rule 26(b)(1)." *City of St. Petersburg v. Total Containment, Inc.*, No. 07-mc-191, 2008 WL 1995298, at *4 (E.D. Pa. May 5, 2008); *see also Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery.").

Finally, notwithstanding Main Line Fertility's status as a non-party, Main Line Fertility has a notable connection to the underlying action as an IVF clinic that one of the named Plaintiffs purchased Defendant's PGT-A testing from. *See* ECF No. 7 at 5; *see also* ECF No. 11, Ex. A ¶ 307. While Main Line Fertility will undoubtedly need to expend resources to comply with the subpoena, the costs of compliance do not appear unduly burdensome because there are only eight

categories of requests that are narrowly tailored towards specific information relating to PGT-A testing. In their subpoena, Plaintiffs also provided examples of the types of documents that would be responsive to their requests within each category, which should assist Main Line Fertility and cut down on the time involved in searching for responsive documents. *See, e.g.*, ECF No. 11, Ex. B at 85 (explaining that contracts and agreements includes "[s]ervice agreements for PGT services," "[p]ricing agreements and fee schedules," and "[r]evenue-sharing or profit-sharing agreements," among other items). On balance, the expense imposed on Main Line Fertility will likely not outweigh the benefits from Plaintiffs' proposed discovery. *See* Fed. R. Civ. P. 26(b)(1).

Accordingly, taking all pertinent factors into account, the Court will deny Defendant's Motion to Quash (ECF No. 1) because Defendant has not established that compliance will subject Main Line Fertility to undue burden, nor is the proposed discovery disproportional to the needs of the case. *See DVM Mfg., LLC*, 2017 WL 3401279, at *3 (denying a motion to quash a subpoena where plaintiff did not meet its "*heavy burden* of establishing that . . . compliance with the [s]ubpoena would be unreasonable or oppressive" (emphasis added)).

### C. Defendant Failed to Demonstrate that the Subpoena Should Be Quashed Due to Disclosure of Confidential Commercial Information

Defendant also argues that the subpoena should be quashed or modified under Rule 45(d)(3)(B)(i) because it requires Main Line Fertility to disclose Defendant's "confidential commercial information," including its "pricing structures, fee arrangements, and contractual terms." ECF No. 1-1 at 11–12. Plaintiff argues that Defendant's "general assertion of sensitivity is insufficient" and does not satisfy the applicable "standard to resist discovery on that basis." ECF No. 7 at 11.

Rule 45(d)(3)(B)(i) permits a district court to "quash or modify [a] subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial

11

information." Fed. R. Civ. P. 45(d)(3)(B)(i); *see also* Fed. R. Civ. P. 26(c)(1)(G) (permitting a court to issue an order requiring that "confidential research, development, or commercial information not be revealed or be revealed only in a specific way"). The subpoenaing party initially has the burden to "show that its requests are relevant within the meaning of Rule 26(b)(1)." *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, No. 20-cv-1113, 2020 WL 3034809, at \*1 (E.D. Pa. June 5, 2020). Thereafter, the burden shifts to the other party to demonstrate that the information sought by the subpoena is subject to protection under Rule 45(d)(3)(B), which requires a showing that "disclosure will cause it a 'clearly defined and serious injury.'" *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014) (quoting *City of St. Petersburg*, 2008 WL 1995298, at \*2); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, at \*5 (E.D. Pa. Jan. 31, 2012). "This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239 (citation omitted).

If the other party can establish that it will suffer a "clearly defined and serious injury" requiring protection under Rule 45(d)(3)(B), the burden then "shifts [back] to the subpoenaing party to show 'a substantial need for the testimony or material that cannot be otherwise met without undue hardship,'" and that the non-party "'will be reasonably compensated.'" *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii)). If the subpoenaing party can demonstrate substantial need, a court "weighs the interests in the disclosures" by employing a balancing test that requires it "to weigh (1) the relevance, (2) need, (3) and confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty." *Id.*

Here, Defendant has not met its heavy burden of demonstrating that disclosure of its "pricing structures, fee arrangements, and contractual terms," *see* ECF No. 1-1 at 12, "will cause

it a clearly defined and serious injury." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239 (internal quotations and citation omitted). Plaintiffs explained that they have a strong need for information about Defendant's pricing and fee arrangements with Main Line Fertility because they "must prove their economic damages" and "need to know the full amounts Plaintiffs paid" Main Line Fertility to buy Defendant's PGT-A testing, including the amount of money that Defendant received in return from the purchase of its testing. ECF No. 7 at 11. Plaintiffs also argued that "understand[ing] how PGT-A testing is promoted and sold as an add-on to IVF, including the financial incentives provided," and evidence of Defendant's terms and contractual arrangements with clinics are all relevant to their misleading marketing claims. *Id.* at 11–12.

In its Motion, Defendant asserted in a conclusory fashion that disclosure of this information "*could* cause concrete competitive harm," *see* ECF No. 1-1 at 12 (emphasis added), but neither identified specific competitors it is concerned about, nor provided any factual support for its argument that it will be harmed by the disclosure of the requested materials. *See City of St. Petersburg*, 2008 WL 1995298, at *2 (denying a motion to quash where the subpoenaed party raised only "idle and unsubstantiated conjecture about the possible actions of anonymous 'competitors'" and where the protective order in the underlying litigation would address "concerns about competitive disadvantage"). For instance, nowhere does Defendant explain why pricing information from several years ago might cause it competitive harm at present, nor does Defendant argue that the sought after materials include trade secrets. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *5 ("[B]lanket and generalized assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash." (citation omitted)). Even if Defendant had met its burden of establishing a "clearly defined and serious injury," the relevance and need for the documents weigh in favor of Plaintiffs under these

13

circumstances.  For these reasons, the fact that the subpoena may request confidential commercial information does not support a finding that it should be quashed or modified.

Furthermore, the parties already have a protective order in place in the underlying litigation that governs the production of documents.  *See* ECF No. 7-4.  The Court will order that any documents that Main Line Fertility produces pursuant to the subpoena shall be subject to the parties' existing protective order in the underlying action where applicable, and shall be handled in accordance with its terms, which should alleviate Defendant's concern with respect to the potential disclosure of sensitive information and serve as a safeguard.  *See id.* ¶¶ 4, 8–10 (permitting the parties to label documents as "confidential" or "confidential – for counsel only" and limiting who may view those documents (emphasis omitted)); *see also Fed. Trade Comm'n*, 2020 WL 3034809, at *3 (denying a motion to quash where a protective order would allow non-parties "to safeguard their confidential information to prevent unauthorized disclosure . . . both during and after the litigation"); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *6 (noting that courts have found protective orders may be "sufficient to protect discovery of confidential business information" (collecting cases)); *Deman Data Sys., LLC v. Schessel*, No. 13-mc-520, 2014 WL 204248, at *4 (M.D. Pa. Jan. 16, 2014) (explaining that protective orders allowing parties to designate documents as for "attorneys' eyes only" are often used "in circumstances where the requesting party could use the information to the disadvantage of the disclosing party" (collecting cases)).

**D.  Defendant Failed to Establish that a Protective Order Should Issue**

In the alternative, Defendant argues that the Court should issue a protective order under Rule 26(c)(1) limiting the scope of the subpoena, such that Main Line Fertility would only need to produce "documents that are directly relevant to the Challenged Marketing Claims at issue."  ECF No. 1-1 at 12–13.  In response, Plaintiffs contend that Defendant "failed to provide good cause

14

why the protective order is needed" and, in any event, there is already a protective order in place in the underlying action, which "governs the handling of confidential information." ECF No. 7 at 13.

Under Rule 26(c)(1), a district court can "enter a protective order to shield a party 'from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 670–71 (3d Cir. 2019) (quoting Fed. R. Civ. P. 26(c)(1)). The party requesting a protective order "over discovery material must demonstrate that 'good cause' exists" to limit or foreclose discovery. *Id.* (citation omitted). To establish good cause, a party must "show[] that disclosure will work a clearly defined and serious injury to the party seeking closure," and "[t]he injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient to establish good cause for the issuance of a protective order. *Id.* (citation omitted). There are a variety of factors that district courts may consider when deciding "whether good cause exists and, by extension, whether a protective order should issue," including (1) "whether disclosure will violate any privacy interests;" (2) "whether the information is being sought for a legitimate purpose or for an improper purpose;" (3) "whether disclosure of the information will cause a party embarrassment;" (4) "whether confidentiality is being sought over information important to public health and safety;" (5) "whether the sharing of information among litigants will promote fairness and efficiency;" (6) "whether the party benefitting from the order of confidentiality is a public entity or official;" and (7) "whether the case involves issues important to the public." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d at 671 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

For similar reasons as explained above, Defendant has not demonstrated good cause for the issuance of a protective order under Rule 26(c)(1) to limit Plaintiffs' proposed discovery. *See* ECF No. 1-1 at 13. Plaintiffs are seeking information for the legitimate purpose of use in their underlying class action, which involves issues that are important to the public—i.e., whether Defendant, a private entity, made misleading statements or omissions in connection with the marketing of its PGT-A testing. In addition, the requested discovery may involve information that is important to public health and safety because it pertains to purported misleading marketing of a test that "screen[s] embryos for chromosomal abnormalities." ECF No. 11, Ex. A ¶ 10. Sharing the requested information amongst the parties will also promote fairness and efficiency because Defendant may already have access to some of the materials that the subpoena seeks by nature of its preexisting relationship with Main Line Fertility. Moreover, Defendant refers generally to its "confidential commercial information," *see* ECF No. 1-1 at 13, but fails to identify in detail any concrete privacy interests that may be violated by means of the proposed discovery. Indeed, Defendant has not adequately demonstrated a "clearly defined and serious injury" that it will suffer from the disclosure of documents in Main Line Fertility's possession that cannot be remedied by the protective order that is already in place in the underlying litigation. Having weighed the relevant factors, the Court thus declines to enter a protective order under Rule 26(c)(1) limiting the scope of the subpoena served on Main Line Fertility.

## III.   **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Motion to Quash (ECF No. 1). Main Line Fertility shall have 30 days from the date of this Memorandum and accompanying Order to comply with the subpoena. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**